UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-80425-RAR

**RANDY ALLEN HERMAN, JR.**,

    Petitioner,

v.

**RICKY D. DIXON, SECRETARY,
FLORIDA DEPARTMENT OF CORRECTIONS**,

    Respondent.
_____/

## ORDER DENYING 28 U.S.C. § 2254 HABEAS PETITION

**THIS CAUSE** comes before the Court on a *pro se* Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, challenging Petitioner's judgment of conviction for first-degree murder imposed by the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida, in Case No. 17-CF-002979. *See* Petition [ECF No. 1] ("Pet."); Memorandum of Law ("Mem.") [ECF No. 1-1]. Respondent filed a Response to the Petition. *See* Response to Order to Show Cause [ECF No. 9] ("Resp."). Having carefully reviewed the record and governing law, and for the reasons set forth below, the Court **DENIES** the Petition.

## PROCEDURAL HISTORY

On April 6, 2017, a grand jury empaneled in Palm Beach County charged Petitioner with first-degree murder. *See* Indictment, [ECF No. 10-1], at 15. The State alleged that, on March 25, 2017, the Palm Beach County Sheriff's Office received a 911 call from Petitioner where he admitted to stabbing and killing the victim, his former roommate. *See* Probable Cause Affidavit, [ECF No. 10-1], at 11–12. During his interview with law enforcement, Petitioner "appeared upset and was crying" and conceded that he "must have" killed the victim even though he had no

memory of doing so. *Id.* at 12.  A friend of the victim later told police that the victim had called him to complain that Petitioner "was acting weird and was drunk." *Id.*

Pursuant to FLA. R. CRIM. P. 3.216, Petitioner's defense counsel filed a notice of intent to rely on an insanity defense during trial.  *See* Notice of Intent to Rely on Insanity Defense, [ECF No. 10-1], at 17–20.  Counsel explained that he had retained an expert psychologist to evaluate Petitioner and that the expert had concluded that Petitioner was suffering from "Sleep Arousal Disorder – Sleepwalking" when the crime took place.  *Id.* at 18.  The State then retained its own expert, who opined that Petitioner "knew what he was doing, the consequences of his actions, and their wrongfulness" because Petitioner had an intact memory of other events and had been flirting with the victim via text message shortly before she was murdered.  Motion in Limine, [ECF No. 10-1], at 32.  Defense counsel moved to exclude the State expert's opinion under Florida law.  *See id.* at 34–35.  The trial court held a hearing on Petitioner's motion in limine, but reserved ruling on the issue until trial so it could "hear the training and experience of the person offering the opinion."  Motion Hr'g Tr., [ECF No. 11-1], at 18:21–24.  At trial, defense counsel declined to object to the State witness's expertise or the expert's ultimate conclusion that Petitioner was not sleepwalking and that the murder was sexually motivated.  *See* Trial Tr., [ECF No. 11-3], at 1056–68, 1104–09.

On May 8, 2019, a jury found Petitioner guilty of first-degree murder as charged in the Indictment.  *See* Verdict, [ECF No. 10-1], at 115.  The trial court adjudicated Petitioner guilty and sentenced him to a mandatory term of life in prison.  *See* Judgment and Sentencing Order, [ECF No. 10-1], at 121–25.

Petitioner appealed his conviction and sentence to Florida's Fourth District Court of Appeal ("Fourth DCA").  Petitioner advanced two arguments on direct appeal: (1) the trial court

erred when it admitted the testimony of the State's expert because it failed "to assess whether the reasoning or methodology underlying the expert testimony was valid"; and (2) the trial court erred when it failed to give a special jury instruction which explained "that the defense was precluded by the rules of evidence from introducing [Petitioner's] statement to the [sic] law enforcement[.]" Direct Appeal Initial Brief, [ECF No. 10-1], at 180–81. On April 14, 2021, the Fourth DCA affirmed Petitioner's conviction in a written opinion. *See Herman v. State*, 315 So. 3d 743, 745 (Fla. 4th DCA 2021). The Fourth DCA declined to consider whether the trial court "erred in admitting the State expert's testimony" because trial counsel failed to object on those grounds during the trial. *Id.* at 744–45. As for Petitioner's jury instruction argument, the Fourth DCA held that the standard jury instruction given to the jury "properly explained the burden of proof and the defendant's theory of defense" and that the trial court's decision not to give a special jury instruction did not "reasonably contribute[ ] to the verdict." *Id.* at 745.

On November 9, 2021,[1] Petitioner filed a *pro se* motion for postconviction relief under FLA. R. CRIM. P. 3.850. *See* Postconviction Motion, [ECF No. 10-1], at 234–56. Petitioner raised seven grounds for relief in his Postconviction Motion: (1) counsel was ineffective "in concluding that sleepwalking is a mental illness and further advising the Defendant to assert insanity as a theory of defense[,]" *id.* at 236; (2) counsel was ineffective for failing to discover that "sleepwalking should have been raised under the legal defense of automatism[,]" *id.* at 240; (3) counsel was ineffective for "failing to consult and present an expert witness in forensic sleep science[,]" *id.* at 241; (4) counsel was ineffective for failing to object "on the grounds that the State's rebuttal expert witness was not qualified to testify on non-rapid eye movement sleep

---

[1] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

arousal disorder," *id.* at 244; (5) counsel was ineffective for failing to obtain a ruling on the motion in limine, *id.* at 247; (6) counsel was ineffective for failing to call Amanda Cona as a defense witness, *id.* at 250; and (7) cumulative error, *id.* at 252.

The State filed a Response to the Postconviction Motion contending that all seven grounds of the Postconviction Motion should be summarily denied. *See* State's Response, [ECF No. 10-1], at 269. On May 18, 2023, the state postconviction court "adopt[ed] the facts, legal analyses, and conclusions of law contained in the State's Response as its own," and denied the Postconviction Motion. Order Denying Postconviction Motion, [ECF No. 10-1], at 294. Petitioner appealed the denial of his Postconviction Motion to the Fourth DCA, but the Fourth DCA summarily affirmed the state postconviction court in an unwritten opinion on October 5, 2023. *See Herman v. State*, 373 So. 3d 315, 316 (Fla. 4th DCA 2023). After denying Petitioner's motion for rehearing, *see* Order Denying Motion for Rehearing, [ECF No. 10-2], at 65, the Fourth DCA's mandate issued on December 7, 2023, *see* Postconviction Mandate, [ECF No. 10-2], at 67.

Petitioner timely filed the instant Petition on April 8, 2024. *See* Pet. at 1.

## **STANDARD OF REVIEW**

### *A. Review Under 28 U.S.C. § 2254*

"As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Some of the more restrictive limits are found in § 2254(d). Under that provision, a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Consequently, § 2254(d) constructs a "highly deferential standard for evaluating state-court rulings" because, after all, this standard "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

"A state court's decision is 'contrary to' federal law if the 'state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Consalvo v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)) (brackets omitted). A state court's decision qualifies as "an unreasonable application of federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quoting *Williams*, 529 U.S. at 413) (cleaned up). "'If this standard [seems] difficult to meet'—and it is—'that is because it was meant to be.'" *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

By its own plain terms, § 2254(d)'s deferential standard applies only when a claim "was adjudicated on the merits in State court proceedings[.]" 28 U.S.C. § 2254(d); *see also Cullen*, 563 U.S. at 181 ("If an application includes a claim that has been adjudicated on the merits in State court proceedings, § 2254(d), an additional restriction applies."); *Cone v. Bell*, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA."). The summary denial of a claim with no articulated reasons presumptively serves as an adjudication on the merits subjecting the claim to § 2254(d)'s additional restrictions. *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons

before its decision can be deemed to have been 'adjudicated on the merits.'"). This is because federal courts ordinarily presume § 2254(d)'s deferential standard applies when a constitutional claim has been presented to a state court and denied in that forum. *See, e.g., id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

At the same time, "federal court[s] should 'look through' [an] unexplained decision to the last related state-court decision that *does* provide a relevant rationale" if one exists. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (emphasis added). From there, federal courts "presume that the unexplained decision adopted the same reasoning." *Id.* "[T]he State may rebut [that] presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.* at 125–26.

In addition to the standard of review imposed by AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court has explained that, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). In other words, a habeas petitioner must <u>also</u> satisfy *Brecht*, even if AEDPA applies. *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original); *see also Mansfield v. Sec'y, Dep't of Corr.*,

679 F.3d 1301, 1307 (11th Cir. 2012) ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

### B. Ineffective Assistance of Counsel Claims

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88).

Regarding the deficiency prong, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take" during the proceedings. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). If "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel did not perform deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong, "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## ANALYSIS

Petitioner advances only one claim in his Petition and incorporated Memorandum of Law. He insists that counsel was ineffective for presenting Petitioner's sleepwalking disorder as an insanity defense. *See* Pet. at 3. Instead, Petitioner explains, "[a]n adequate investigation of Petitioner's theory of defense and sufficient knowledge of the law would have revealed that sleepwalking is properly raised through a defense of automatism, often referred to as unconsciousness, and that such a defense was available in Florida and further supported by Federal law." *Id.* Petitioner believes that presenting his sleepwalking defense through the lens of insanity, rather than "automatism," prejudiced him because it shifted the burden of proof from the State and onto the defense. *See* Mem. at 5. The State responds that defense counsel properly and reasonably asserted an insanity defense based on Petitioner's sleepwalking disorder and that "there is no statutory authority or case law in Florida that supports his argument that automatism instead of insanity was the proper way to raise sleepwalking as a defense in his case[.]" Resp. at 15.[2] After reviewing the record and the parties' pleadings, the Court finds that Petitioner's argument lacks merit.

Under AEDPA's stringent standard of review, a habeas petitioner is not entitled to relief unless he or she shows that, in an earlier "State court proceeding," the state court unreasonably applied clearly established federal law or made an unreasonable factual determination in denying the petitioner's claim. *See* 28 U.S.C. § 2254(d)(1)–(2). The relevant "State court proceeding" for

---

[2] Respondent does not contest the timeliness of the Petition and has expressly waived an exhaustion defense. *See* Resp. at 5, 12. Accordingly, the Court will analyze the merits of the Petition under AEDPA's standard of review without considering the viability of any other procedural defenses. *See Day v. McDonough*, 547 U.S. 198, 209 (2006) (holding that district courts "are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition"); *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) ("States can waive procedural bar defenses . . . including exhaustion" (alteration adopted; internal quotation marks omitted)).

AEDPA purposes is the "highest state court decision" that reached the merits of the habeas petitioner's claim. *See Newland v. Hall*, 527 F.3d 1162, 1199 (11th Cir. 2008). In this case, the "highest state court decision" at issue is the Fourth DCA's opinion summarily affirming the denial of Petitioner's Postconviction Motion. *See Herman*, 373 So. 3d at 316. Since the Fourth DCA did not render a "reasoned opinion," the Court must "look through" this decision to "the last related state-court decision that does provide a relevant rationale." *Wilson*, 584 U.S. at 125. The state postconviction court's order denying Petitioner's Postconviction Motion merely adopted the reasoning of the State's Response, *see* Order Denying Postconviction Motion, [ECF No. 10-1], at 294, so "the Court shall review the reasonableness of the State's Response as it is the presumptive reasoning of both the Fourth DCA and the state postconviction court." *Baker v. Dixon*, No. 21-CV-60876, 2022 WL 3867784, at *10 (S.D. Fla. Aug. 30, 2022) (cleaned up).

Petitioner claims that counsel was ineffective for framing his sleepwalking as "an affirmative insanity defense" when it should have been presented as an "automatism" defense—which would have purportedly convinced the jury that Petitioner "did not commit the act voluntarily or with criminal intent." Pet. at 5; *see also* Mem. at 5–6 (same). In denying this same claim, the state postconviction court adopted the State's arguments that: (1) sleepwalking must be presented as an insanity defense under *Cook v. State*, 271 So. 2d 232 (Fla. 2d DCA 1973); (2) the record shows that counsel's decision to package sleepwalking as an insanity defense was based on an exceedingly thorough and reasonable investigation into the science and law; and (3) Petitioner did not suffer any prejudice because the physical evidence presented at trial proved "that the defendant's actions were premediated and [that] he was awake during the victim's murder [and] not sleepwalking at all." *See* State's Response, [ECF No. 10-1], at 261–65.

The state postconviction court found, as a matter of state law, that a sleepwalking defense is a species of insanity—not automatism, diminished capacity, or any other type of defense. *See id.* at 261 ("A defense utilizing a state of unconsciousness or automatism, such as a defendant claiming no recollection of committing a crime due to allegedly suffering an epileptic seizure at the time of the crime, falls within the insanity defense, as seen in *Cook v. State*, 271 So. 2d 232 (Fla. 2d DCA 1973)."). Although the state postconviction court conceded that *Cook* concerned an epileptic seizure (and not sleepwalking), it applied *Cook*'s reasoning to find that a condition causing a defendant to have "no recollection of committing a crime" was properly categorized as an insanity defense. *Id.*; *see also Cook*, 271 So. 2d at 233 (applying insanity defense where "Cook does not deny that he committed the offense, but claims that he has no recollection of what happened that night"). This Court cannot second-guess a state court's application of state law, so its finding that sleepwalking must be presented as an insanity defense under Florida law is fatal to Petitioner's claim. *See Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997) ("[S]tate courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters."). In other words, counsel was not ineffective for presenting sleepwalking as an insanity defense because, under state law, that was the only way he could. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) (holding that counsel cannot be ineffective for failing to raise a state-law objection where the state's courts "already told us how the issues would have been resolved under . . . state law").

Petitioner resists this conclusion, arguing that "an automatism defense has been recognized by courts as a complete defense bearing on the voluntariness of an otherwise criminal act" and that "automatism" is legally distinct from "insanity." Mem. at 7. Petitioner is right that <u>some</u> jurisdictions categorize sleepwalking as an "automatism" defense rather than an insanity defense.

*See, e.g.*, *McClain v. State*, 678 N.E.2d 104, 109 (Ind. 1997) (describing "sleepwalking" as "automatism" and distinguishing it from an "insanity defense" under Indiana law); *Fulcher v. State*, 633 P.2d 142, 147 (Wyo. 1981) ("We now hold that, under the law of this state, unconsciousness, or automatism, is a complete defense to the criminal charge, separate and apart from the defense of insanity[.]" (quoting *State v. Caddell*, 215 S.E.2d 348, 363 (N.C. 1975)). The problem is that many other states—including Florida—categorize sleepwalking, unconsciousness, and other forms of automatism as insanity defenses. *See Loven v. State*, 831 S.W.2d 387, 391 (Tex. App. 1992) ("Texas courts have held that states of unconsciousness or automatism, including epileptic states, are includable in the defense of insanity."); *Tibbs v. Commonwealth*, 128 S.W. 871, 874 (Ky. 1910) (describing "somnambulism," or sleepwalking, as a defense "that is embraced in a plea of insanity"); *see also United States v. Savage*, 67 M.J. 656, 661 n.6 (A. Ct. Crim. App. 2009) ("We note that courts have not come to a consensus on the legal status of parasomnia and the parasomnia defense"). Florida's refusal to recognize automatism as a distinct defense from insanity does not make Petitioner's conviction repugnant in the eyes of the Constitution. *See Kahler v. Kansas*, 589 U.S. 271, 282 (2020) ("A State's insanity rule is substantially open to state choice. . . . [N]o particular insanity test serves as a baseline for due process. Or said just a bit differently, [ ] due process imposes no single canonical formulation of legal insanity." (cleaned up)); *Haskell v. Berghuis*, 511 F. App'x 538, 545 (6th Cir. 2013) ("Supreme Court precedent does not clearly establish an automatism defense, nor does it establish that defendants may raise whatever defenses they choose.").[3]

---

[3] For what it's worth, the Court also finds that the distinction between insanity and automatism defenses would have had no bearing on the outcome of Petitioner's case. Petitioner appears to believe that automatism <u>is not</u> an affirmative defense, and that simply invoking an automatism defense would immediately negate a crime's *actus reus* and *mens rea* unless the State could disprove the automatism defense beyond a reasonable doubt. *See* Pet. at 4; Memo. at 5–6, 9–10. This is mistaken. Both automatism and insanity are affirmative defenses which place the burden of proof on the defendant. *See, e.g.*, *State v.*

At the end of the day, Petitioner's argument boils down to his frustration that Florida law cabins sleepwalking within the well-worn confines of its insanity defense. Although legal scholars can question the wisdom of combining insanity and automatism defenses together, *see Palmer v. State*, 379 P.3d 981, 990 & n.24 (Alaska Ct. App. 2016), federal courts cannot pass judgment on matters of state law, *see McCullough v. Singletary*, 967 F.2d 530, 535–36 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief . . . . State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state[.]"). Since counsel was not ineffective for using Petitioner's alleged sleepwalking disorder to present an insanity defense within the parameters of Florida law, Petitioner fails to show that the state courts unreasonably applied *Strickland* (or any other federal law) in denying his application for postconviction relief. *See Herring*, 397 F.3d at 1354–55. Accordingly, the Petition is **DENIED**.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

---

*Rogers*, 725 S.E.2d 342, 349 (N.C. Ct. App. 2012) ("Automatism is an affirmative defense, and the burden is on the defendant to prove its existence to the jury."); *City of Missoula v. Paffhausen*, 289 P.3d 141, 148 (Mont. 2012) (describing automatism as "an affirmative defense"); *State v. Ireland*, 121 N.E.3d 285, 293 (Ohio 2018) ("Ireland's blackout defense . . . is an affirmative defense[.]"); *Polston v. State*, 685 P.2d 1, 6 (Wyo. 1984) ("[T]he burden is upon the defendant who raises the defense of automatism to prove the elements necessary to establish the defense[.]"). For this reason, the Court finds that, even if defense counsel tried to put on an automatism defense, the outcome of Petitioner's trial would not have changed because Petitioner retained the same burden of proof as he did when presenting an insanity defense. *See Strickland*, 466 U.S. at 694.

## CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA"). A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition. Rather, to pursue an appeal, a petitioner must obtain a COA. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And "[w]here a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)).

Here, reasonable jurists would not debate the Court's decision to deny the Petition on its merits. Accordingly, a COA will **NOT ISSUE**.

## CONCLUSION

Having carefully reviewed the record and governing law, it is hereby

**ORDERED AND ADJUDGED** that the Petition, [ECF No. 1], is **DENIED**. Any request for a certificate of appealability is **DENIED**, and an evidentiary hearing is **DENIED**. All deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot. The Clerk is directed to **CLOSE** the case.

**DONE AND ORDERED** in Miami, Florida, this 20th day of May, 2024.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**